# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Superior Industries, LLC,                          Civil No. 10-764 (DWF/LIB)

        Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**

Masaba, Inc.,

        Defendant.

---

John M. Weyrauch, Esq., Paul P. Kempf, Esq., and Peter R. Forrest, Esq., Dicke, Billig & Czaja, PLLC, counsel for Plaintiff.

Jeffrey C. Brown, Esq., Sapientia Law Group; and Sander J. Morehead, Esq. and Tim R. Shattuck, Esq., Woods Fuller Shultz & Smith, P.C., counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Second Motion for Summary Judgment brought by Defendant Masaba, Inc. ("Masaba") (Doc. No. 190) and a Cross-Motion to Vacate the Constructions of "Channel Beam" and "Elongate Opening" or in the Alternative to Grant Plaintiff's Summary Judgment of Noninfringement of the Undercarriage Patents and Dismissal of Invalidity Counterclaims brought by Plaintiff Superior Industries, LLC ("Superior") (Doc. No. 203). For the reasons stated below, the Court grants Masaba's Second Motion for Summary Judgment, denies Superior's motion to vacate, denies Superior's Motion for Summary Judgment as moot, and dismisses Masaba's invalidity counterclaims without prejudice as moot.

## BACKGROUND

In its Amended Complaint, Superior alleges that Masaba has infringed one or more claims of U.S. Patent No. 7,424,943 (the '943 Patent), U.S. Patent No. 7,607,529 (the '529 Patent), and U.S. Patent No. 7,845,482 (the '482 Patent) (together the "Unloader Patents") by making and selling certain truck unloaders.  (Doc. No. 36 ("Am. Compl.") ¶¶ 14-32.)  Superior also alleges that Masaba has infringed on ore more claims of U.S. Patent No. 7,470,101 (the '101 Patent) and U.S. Patent No. 7,618,231 (the '231 Patent") (together, the "Support Strut/Undercarriage Patents") by making and selling stacking conveyors equipped with a support strut.  (*Id.*)[1]  Masaba filed amended counterclaims seeking, in relevant part, declaratory judgment pursuant to 28 U.S.C. § 2201 that the patents-in-suit are invalid.  (Doc. No. 37 ("Answer and Countercl.") ¶ 9.)

In a Memorandum Opinion and Order dated August 17, 2012 (the "*Markman* Order"), the Court construed the disputed terms in this action.  (Doc. No. 118 ("*Markman* Order").)  In the *Markman* Order, the Court stated the following with respect to Superior's Unloader Patents:

> The device claimed in the Unloader Patents was intended to address

---

[1]     The five patents-in-suit involve two different technologies—a low-profile truck unloader system and a telescoping support strut system—that fall generally in the field of bulk material handling equipment, which is commonly used in industries such as mining, ship loading, and road construction, for example.

The Unloader Patents are included as exhibits to the Amended Complaint; the '943 Patent is attached as Exhibit A; the '529 Patent is attached as Exhibit B; and the '482 Patent is attached as Exhibit F.  The Support Strut Patents (the '101 Patent and the '231 Patent) are included as Exhibits C and D, respectively, to the Amended Complaint. All future citations to the Patents in this case refer to the exhibits to the Amended Complaint.

the need for a material transport vehicle unloading system that is portable, quick to set up, and able to be relocated. (['943 Patent], col. 1, ll: 30-35; col. 2, ll: 31-33; Fig. 1 ("low-profile, portable drive-over truck dump conveyor system"); col. 4, ll: 33-54.)  Specifically, the Unloader Patents claim a truck unloader comprising a portable, vehicle-towed, longitudinally-extending frame supporting a conveyor system with three ramp sections. (*Id.*, col. 1, ll: 39-55.)  One end of the frame has a towing connector, and the other end has a wheeled axle system that allows the truck unloader to be road transportable. (*Id.*, col. 2, ll: 33-40.)  After towing, the towing vehicle is disconnected and the portion of the frame that carries the drive-over ramp system is placed on the ground. (*Id.*, col. 3, ll: 57-67.)  The ramp system is comprised of three ramp sections:  two are drive-on sections that are pivotally connected to each side of the frame and are comprised of a support frame and a ramp; and a third section includes a grate over the hopper of the longitudinally-extending frame. (*Id.*, col. 2, ll: 53-60.)  The two drive-on ramp sections are lowered into contact with the ground.  The grate in the third ramp section is designed to support the transport vehicle and to allow material to be deposited on the conveyor belt system.

(Doc. No. 118 at 5-6.)

With respect to the Unloader Patents, the Court construed several terms.

Significantly, the Court explained that the claimed invention's "support frame" is

comprised of a pair of side frame members and an end frame member and ruled that the

term "support frame" "must be construed to include the purpose of the structure," which

is "primarily, to provide a barrier for an earthen ramp and, secondarily, to provide

support for a pivoting ramp." (*Id.* at 12-14.)  The Court therefore construed "support

frame" as "a frame consisting of a pair of side frame members and an end frame member

that provides a barrier for supporting an earthen ramp that can also provide support for a

pivoting ramp when it is in a lowered position." (*Id.* at 15, 23, 36 and 41.)

The Court also noted that Superior's Strut/Undercarriage Patents relate to

conveyor systems used in stockpiling rock or other aggregate material and claim a

particularly-configured support strut for a stacking conveyor.  (*Id*. at 41-42.)  With

respect to the Support Strut/Undercarriage Patents, the Court explained:

> The claims of the Support Strut Patents define a "telescoping support
> strut" that supports a conveyor assembly of a portable conveyor system
> comprised of two strut sections (a first strut section and a second strut
> section).  The support strut telescopically extends and retracts the conveyor
> assembly.  (['101 Patent], col. 1, ll: 15-25.)  The claimed telescoping
> support strut is "fully braced" to improve its stability and rigidity when
> extended.  (*Id*., col. 7, ll: 53-col. 8, ll: 14.)  The strut resembles a
> telescoping ladder with two sections.  (*Id*. at Abstract.)
>
> The first section of the strut is comprised of a pair of cross-braced
> beams that are attached to the "upper" portion of the conveyor system; and
> the second section of the strut is comprised of a pair of channel beams that
> are cross-braced to one another and pivotally-connected to the base of the
> conveyor system.  (*Id*.)  The beams of the first strut section have "facing
> surfaces" and are telescopically received by the channel beams of the
> second section.  (*Id*. at Figs. 4A, 4B, 4C, 5 & col. 1, ll: 46-54.)  There is a
> slot in the perimeter wall of the channel beams within which the beams of
> the first strut section travel.  (*Id*., col. 1, ll: 54-57.)  Hydraulic cylinders
> move the first strut section in and out of the second strut section.  There is a
> box frame located where the first strut section emerges from the second
> strut section to provide support to the ends of the channel beams of the
> second strut section.

(*Id*. at 42.)  The Court then construed "channel beam" to mean "a metal beam having a

perimeter wall with three complete sides and one partial side configured to substantially

surround all four sides of the respective beam [of the first strut section] it engages with."

(*Id*. at 51-52.)  The Court also construed the term "elongate opening" to mean a "slot

defined by the openings in the partial fourth sides of the channel beams."  (*Id*. at 53.)

 After the Court issued its *Markman* Order, Masaba moved for summary judgment

seeking dismissal of Superior's Amended Complaint based on Superior's inability to

establish infringement or entitlement to relief.  (Doc. Nos. at 133 & 134.)  Superior

conceded that, under the Court's *Markman* Order, it could not establish infringement of

any of the claims of the patents-in-suit and filed a motion seeking both entry of judgment of non-infringement and dismissal of the invalidity counterclaims. (Docs. No. 143 & 144.) In an Order dated February 7, 2013, the Court granted Superior's motion for judgment of non-infringement. (Doc. No. 154.)

Superior appealed the Court's *Markman* Order to the Federal Circuit Court of Appeals. (Doc. No. 159.) On January 16, 2014, the Federal Circuit issued an Opinion and Judgment. (Doc. No. 183 ("Fed. Cir. Opinion").) The Federal Circuit vacated and remanded the case for further proceedings, noting that the district court's summary judgment opinion does not explain how the construction of any term would affect Superior's infringement claims. (*Id*. at 6.) The Federal Circuit explained: "It is impossible for us to determine from this opinion which of the thirteen contested claim constructions would 'actually affect' the infringement analysis. This poses a risk that our review of at least some of these constructions would amount to an advisory opinion." (*Id*. at 7.)

With respect to the Unloader Patents, the Federal Circuit noted that several of the disputed terms ("support frame," U-shaped frame," and "end frame member," etc.) involve the support frame located under the ramp sections in the claimed unloaders. (*Id*. at 8.) The Federal Circuit also noted that "[n]ot all of Masaba's accused unloader systems include a support frame" and explained that "[i]f none of the accused products include a support frame, then the multiple terms relating to the support frame are irrelevant to the infringement analysis and our review of the district court's construction of these terms would be an impermissible advisory opinion." (*Id*.)

With respect to the Support Strut/Undercarriage Patents, the Federal Circuit noted that the parties dispute the construction of the term "channel beam"—and in particular that the parties dispute whether the term denotes a beam with three sides or a beam that necessarily includes a partial fourth side.  (*Id*. at 7.)  While the Court, in its *Markman* Order, construed "channel beam" as having a partial fourth side, the Federal Circuit explained that Masaba claims that the allegedly infringing support strut system does not use a channel beam at all, and if this is the case, whether the claimed channel beam requires a partial fourth side is irrelevant.  (*Id*.)

Finally, the Federal Circuit stated:

> It is unclear for several disputed terms whether a revised construction would have any effect on the infringement analysis at all.  Assuming that a revised construction would affect the infringement analysis for the remaining terms, it is still unclear what this effect would be.  A remand for clarification is necessary to enable this court to properly exercise its appellate jurisdiction.

(Doc. No. 183 at 9.)

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The determination of whether a patent claim is infringed involves a two-step analysis. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). First, the patent claims at issue must be construed to determine their proper scope and meaning. *Id*. Second, the claims must be comparted to the accused device. *Id*.

The Court previously construed the claims at issue in its *Markman* Order. Therefore, the Court must now address the claim terms discussed by the Federal Circuit and compare them to the accused devices to determine whether there is infringement. To establish literal infringement, Superior must prove that every separate limitation set forth in the asserted claims is found in the accused device. *See Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

## I.      Unloader Patents

The Federal Circuit explained that the Unloader Patents claim a system that includes a "support frame" beneath each ramp section that "defines a barrier" between the pre-fabricated ramp and the on-site ramp.  (Doc. No. 183 at 3-4.)  The Federal Circuit also explained that if the accused products do not have a support frame, there is no infringement of the Unloader Patents and, therefore, no need to construe the contested claim terms that are related to the support frame.  (*Id*. at 8.)

The record shows that there are five different designs of truck unloaders that have been sold by Masaba—Designs A, B, C, D, and E.  (Doc. No. 192 ("Second Higman Aff.") ¶¶ 2-3 & Exs. A-E.)  Masaba has submitted evidence that it has manufactured and sold only one of each of the Unloader Truck Designs A, B, C, and D.  (*Id*. ¶ 4, Ex. F; *see also* Fed. Cir. Opinion at 4.).  Masaba also points to evidence that since early 2011, all of the low-profile truck unloaders it has sold have been substantially identical to Design E.  (Second Higman Aff. ¶ 5 & Ex. E.)[2]

Masaba contends that none of its accused unloader trucks has a "support frame."  The Court agrees.  Indeed, the Court has construed a "support frame" so as to include at least a structure comprising a pair of side frame members and an end frame member.  Masaba has submitted evidence that none of its accused Truck Unloaders has a "support

---

[2]      Superior argues that there is a factual dispute regarding which versions of the Truck Unloaders are still being made and offered for sale by Masaba.  However, as discussed below, Superior cannot prove that *any* of the Design versions infringe the Unloader Patents.  Therefore, the dates of sale of each Design version are not material at this time.

frame" with an "end frame member."  (Doc. No. 193 ("Second Loeffler Aff.") ¶¶ 6-10 &

Ex. 1; Second Higman Aff. ¶¶ 8-11, Exs. A-E.)

In addition, the Court concluded that the "end frame member" of the "support

ramp" provides a barrier for supporting the earthen ramp, which is constructed on-site to

access the pivoting ramps.  The Federal Circuit similarly noted that the claimed invention

of the Unloader Patents includes a "support frame beneath each ramp section that defines

a barrier between the pre-fabricated ramp and the on-site ramp."  (Fed. Cir. Opinion

at 3-4.)  The "on-site" ramp is necessarily the ramp constructed on-site using earthen

material.  Masaba has submitted evidence that its accused Unloader Trucks use

prefabricated, portable steel ramps, instead of earthen ramps, to access the pivoting

ramps.  (Second Loeffler Aff. ¶ 8 & Ex. 1; Second Higman Aff. ¶ 9, Exs. A-E.)  By using

the prefabricated, portable steel ramps (as opposed to on-site earthen ramps), the accused

Unloader Trucks necessarily lack a "support frame" that defines a barrier between the

prefabricated pivoting ramp and an on-site (earthen) ramp.  (Second Loeffler Aff.

¶¶ 8-10; Second Higman Aff. ¶¶ 9-11, Exs. A-E.)

For the above reasons, none of Masaba's unloaders have a "support frame," and

therefore they do not infringe the Unloader Patents.  Even so, the parties note that the

Federal Circuit indicated that it would be helpful if the parties addressed infringement of

the various accused devices.  Therefore, the Court briefly analyzes the asserted claims in

more detail below.

A.     Designs A-C

Superior alleges that Designs A, B, and C infringe:  claims 2 through 6 of the '943 Patent; claims 1 through 5, 7, 9, 15, and 19 of the '529 Patent; and claims 1 through 3 of the '482 Patent.

Claim 2 of the '943 Patent recites a "portable truck dump comprising," in part, a "support frame comprising a frame member . . . wherein the first frame member is configured to support an end of an earthen ramp." ('943, col. 8, ll: 32-39.)  Claims 3 through 6 of the '942 Patent all depend directly or indirectly on claim 2.  (*Id.*, col. 8, ll: 44-62.)  The Court previously construed the term "support frame" throughout all of the Unloader Patents as "a frame consisting of a pair of side frame members and an end frame member that provides a barrier for supporting an earthen ramp that can also provide support for a pivoting ramp when it is in a lowered position."  (*Markman* Order at 15.)  The Court also construed the term "configured to support an end of an earthen ramp" to mean "that the end frame member has a structure that is designed to and able to support an end of an earthen ramp constructed against it to keep the earthen ramp from moving."  (*Id.* at 17.)

Claim 1 of the '529 Patent (which recites a "portable conveyor system") also includes limitations requiring:  (1) a "support frame configured for contact with the ground surface"; and (2) a "frame member" of the ramp support frame "defining a barrier." ('529 Patent, col. 7, ll: 47-53.)  Claims 2 through 5, 7, and 9 of the '529 all depend directly or indirectly on Claim 1.  Claims 15 and 19 of the '529 Patent include a limitation requiring that each ramp of a pair of ramps connected to the frame have a

portion "configured to support an earthen ramp" and that "maintains support of an earthen ramp." (*Id*., col. 10, ll: 4-15.) Claim 19 depends on Claim 15. As noted above, the "support frame" was construed consistently throughout all Unloader Patents. In addition, the Court construed "frame member" of the ramp support frame as "end frame member serving as a barrier that functions to support an end of a ramp made of earthen material piled adjacent to and in contact with the end frame member." (*Markman* Order at 26.) Further, the Court construed the phrase "first portion maintains support of the earthen ramp" as "the first portion stays on the ground, does not move," and "maintains the earthen ramp in its original and intended form and position." (*Id*. at 31.)

Finally, Claims 1 through 3 of the '482 Patent include the following two limitations: (1) a "U-shaped frame"; and (2) an "end frame member." ('482 Patent, col. 7, ll: 53-55.) Claims 2 and 3 also require "drive on ramps." (*Id*., col. 8, ll: 10, 17.) The Court construed "U shaped frame" as having the same meaning as "ramp support frame" and "end fame member" as "end frame member serving as a barrier that functions to support an end of a ramp made of earthen material piled adjacent to and in contact with it." (*Id*. at 37.) The Court also construed "drive on ramp" as "earthen ramp." (*Markman* Order at 38.)

Masaba's Truck Unloader designs A, B and C include a structure that lies underneath each folding ramp that connects between the main frame of the truck unloader and a drive-on ramp. The structure includes two alignment tubes (or generally parallel bars) located underneath the pivoting ramps that extend from each side of the unloader's longitudinally-extending frame to a prefabricated, portable steel access ramp. (Second

Higman Aff. ¶ 10, Exs. A-C; Second Loeffler Aff. ¶ 9; Doc. No. 205 ("Felton Decl.")

¶ 5.)

The Court construed "support frame" so as to include at least a structure

comprising a pair of side frame members and an "end frame member" that in turn

"provides a barrier for supporting an earthen ramp." Even if Masaba's Unloader Trucks'

alignment tubes (or bars) could be considered to be a pair of side frame members, the

structure lacks the required "end frame member." The alignment tubes do not attach to

an "end-frame member." (Second Loeffler Aff. ¶ 9.) Instead, the alignment tubes

connect to the portable steel access ramp itself, *not* to an end frame member that provides

a barrier for supporting an earthen ramp. In fact, there is no structure between the

pivoting ramps and the portable steel access ramps that comprises a barrier at all.[3] This is

because Masaba's Unloader Trucks (Designs A-C) do not use on-site earthen ramps (or

on-site ramps at all). Instead, they use portable, prefabricated ramps. Thus, the Court

holds, as a matter of law, that Masaba's Unloader Trucks Designs A-C do not have a

support frame and, therefore, do not infringe the Unloader Patents.[4]

---

[3]   Superior contends that in at least one version of Masaba's truck unloader, the
opposite ends of the alignment tubes (or bars) connect to a cross-member that is attached
to two metal drive-on ramps, and that the cross-member holds back material that falls
between the drive-on ramps and holds that material back. (Felton Decl. ¶ 5.) Masaba,
however, submits evidence that the alignment tubes do not connect to a cross-member
and that they actually attach to the inner end of the portable access ramp. (Second
Higman Aff. ¶ 10.) Even so, there is no dispute that the cross-member does not function
to hold back an earthen ramp.

[4]   The Court notes that Superior acknowledges that it cannot prove that Unloader
Truck Designs A-C infringe the Unloader Patents, in particular because the cross-member
(Footnote Continued on Next Page)

B.      Designs A-E

Superior asserts that Masaba Unloader Truck Designs A-E infringe Claim 5 of the '482 Patent.  Claim 5 reads in part:  "the drive-over ramp system comprising a first/second ramp section pivotally mounted on a first/second side of the [longitudinally-extending] frame." ('482 Patent, col. 8, ll:35-45.)  The Court construed "ramp section" as "including a ramp and a frame consisting of a pair of side frame members and an end frame member that provides a barrier for supporting an earthen ramp that can also provide support for the pivoting ramp when it is in a lowered position."  (*Markman* Order at 40.)

As noted above, Designs A, B, and C do not have a ramp support frame with an end frame member that defines a barrier between the pivoting ramps and an on-site ramp.  In addition, Masaba has submitted evidence that Unloader Truck Designs D and E do not have any structure that could be characterized as a ramp support frame.  (Second Higman Aff. ¶ 11, Exs. D & E; Second Loeffler Aff. ¶ 10.)  Thus, the Court concludes that Designs A-E do not infringe Claim 5 of the '482 Patent.[5]

_____

(Footnote Continued From Previous Page)
does not function to hold back an earthen ramp and because the cross-member does not serve both the purposes the Court construed as necessary for the end frame member of the ramp support frame.  (Doc. No. 202 at 8-9.)

[5]      Superior acknowledges that it cannot prove that any of the Designs infringe Claim 5 of the '482 Patent under the Court's present claim construction.

## II.      Support Strut/Undercarriage Patents

In its Amended Complaint, Superior alleges that Masaba's support strut design

infringes Claims 1 through 8 of the '101 Patent and Claims 1 through 15 of the '231

Patent.  Every independent claim of the Support Strut/Undercarriage Patents requires one

or both of the following limitations:  "channel beam" and "elongate opening."  The Court

construed the term "channel beam" as "a metal beam having a perimeter wall with three

complete sides and one partial side configured to substantially surround all four sides of

the respective beam it engages with."  (*Markman* Order at 52.)  The Court also explained

that a "channel beam" must have:

> three complete sides and a partial fourth side defining a slot, so that the
> channel beams substantially surround all four sides of the beams with
> which they engage.  Without a partial fourth side, the channel beam would
> not 'substantially surround' the beams of the first strut section; nor would
> there be a 'perimeter wall adjacent to the facing surfaces' of the first strut
> section.

(*Id*. at 51-52.)  The Court construed the term "elongate opening" as a "slot defined by the

openings in the partial fourth sides of the channel beams."  (*Id*. at 53.)

In its Opinion, the Federal Circuit noted the parties' dispute as to whether the term

"channel beam" "denotes a beam with three sides or whether it denotes a beam that

necessarily included a partial fourth side."  (Fed. Cir. Opinion at 7.)  The Federal Circuit

also noted that Masaba claims that its allegedly infringing strut system does not use a

channel beam at all.  The Federal Circuit then stated:  "If this is true, then the question of

whether the claimed channel beam requires a partial fourth side is irrelevant to

infringement and any guidance we provide on this question would be advisory."  (*Id*.)

Masaba has put forth evidence that establishes that its strut design does not include a second strut section with "channel beams" of any configuration.  (Second Loeffler Aff. ¶ 12; Second Higman Aff. ¶¶ 13-14.)  Instead, the second strut section is comprised of a pair of parallel and continuous rectangular, hollow side tubes.  (Second Loeffler Aff. ¶ 12, Exs. 1 & 3; Second Higman Aff. ¶¶ 13-14, Ex. G.)  The side tubes have four complete walls with no channel, opening, or slot in any of the walls.  (*Id.*)  Masaba notes, and the Court agrees, that based on the fact that the tubes have four full sides, "it is axiomatic that they do not have a 'channel' and are not 'channel beams' with three or four sides" and that "forecloses the possibility that they have an 'elongate opening' in one side."  (Doc. No. 191 at 19.)  Superior acknowledges that:

> [i]n the event the Court maintains its constructions of "channel beam" and "elongate opening" as requiring . . . fourth partial side walls that are not present in Masaba's undercarriage, Superior concedes non-infringement of the Undercarriage Patents with a reservation of the right to challenge the Court's claim construction on appeal.

(Doc. No. 202 at 16.)

Based on the above, the Court concludes that Masaba's support strut does not infringe any claims of Superior's Strut Patents.

## III.    Motion to Vacate

With respect to the Support Strut/Undercarriage Patents, Superior argues that Masaba's second motion for summary judgment is predicated on a theory of non-infringement that cannot be resolved based on the Court's claim construction of "channel beam" and "elongate opening."  In particular, Superior argues that Masaba sought a claim construction for the channel beam (which was adopted by the Court in its

*Markman* Order) that was irrelevant and unnecessary and, therefore moves the Court to vacate the claim construction on these terms.

Masaba opposes the motion to vacate on the grounds that it is untimely and without merit. The Court declines to find that Plaintiff's motion to vacate is untimely under Federal Rule of Civil Procedure 60, which provides that a motion for relief under the rule must be made within a reasonable time. Fed. R. Civ. P. 60(c). Although Superior moved for a partial vacation of the *Markman* Order nearly two years after the order was issued, the Court notes that there was an intervening appeal of the *Markman* Order during that time period. In addition, courts may also change or clarify claim construction and revise prior rulings as circumstances dictate. *See, e.g.*, *Pressure Prods. Med. Supplies v. Greenbatch*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010). Instead, the Court will consider the merits of Superior's motion to vacate.

In support, Superior argues that Masaba's sole theory of non-infringement has been that its undercarriage does not have a channel beam at all. Superior argues that Masaba never detailed a non-infringement contention based on a lack of a channel beam having first, second, and third side walls, with fourth partial side walls. Thus, Superior submits that while Masaba contends that the beams used in its lower strut lack any channel beam, Masaba sought a claim construction requiring a channel beam to have first, second, third, and fourth partial side walls. Superior argues that this construction is unnecessary and should be vacated.

Masaba counters that its infringement position and proposed construction of the channel beam have been consistent. Masaba submits that its position has been that the

side tubes of its lower strut section are not channel beams, as the term "channel beam" is properly construed based on the intrinsic record.  In addition, Masaba points out that it repeatedly asserted in its claim charts that its accused devices did not read upon the channel-beam limitation because Masaba's strut utilizes a pair of side tubes that each have a perimeter wall that is continuous and uninterrupted with no breaks, slots, or openings extending longitudinally along the side tube.  Masaba also asserted that its side tubes do not have a "generally C-shaped" configuration or a channel configuration and that they lack any elongate opening that extends the length of the channel beams.  Masaba further contends that it was not required to propose a construction of "channel beam" that directly tracked its non-infringement contentions, but rather that its construction was properly based on the intrinsic evidence.

The Court has already construed the meaning of the terms "channel beam" and "elongate opening" based on the intrinsic evidence presented to the Court during the *Markman* proceedings.  The Court finds nothing in the record with respect to Masaba's infringement contentions and proposed constructions of the above terms that warrants vacating the Court's construction of the term "channel beam."  Accordingly, Superior's motion to vacate is denied.

## CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** that:

1.      Masaba's Second Motion for Summary Judgment of Non-Infringement (Doc No. [190]) is **GRANTED**.

2.      Superior's Cross-Motion to Vacate the Constructions of "Channel Beam" and "Elongate Opening" or in the Alternative to Grant Plaintiff's Summary Judgment of Noninfringement of the Undercarriage Patents and Dismissal of Invalidity Counterclaims (Doc. No. [203]) is **GRANTED IN PART**  and **DENIED IN PART** as follows:

      a.      Superior's motion to vacate is **DENIED**;

      b.      Superior's motion for summary judgment is **DENIED AS MOOT**; and

      c.      Superior's motion to dismiss Masaba's invalidity counterclaims without prejudice as moot is **GRANTED**.

3.      Masaba's invalidity counterclaims are **DISMISSED WITHOUT PREJUDICE AS MOOT**.

4.      Masaba's Motion for Leave to Submit Third Affidavit of Jerad Higman (Doc. No. [213]) is **GRANTED** insofar as the Court considered for illustrative purposes only the three-dimensional model of Masaba's accused support strut.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  March 24, 2015                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge